**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KATHI IMBO,** | ) | |
| | ) | **Case No. 10-cv-3262** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Magistrate Judge Susan E. Cox** |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Kathi A. Imbo ("Imbo"), seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for a period of disability and for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] Imbo has filed a Motion for Summary Judgment which seeks a reversal or remand of the Commissioner's final decision. For the reasons stated below, we grant Imbo's motion and remand the case to the Administrative Law Judge for further findings consistent with this opinion [dkt. 15].

**I.     Procedural History**

Imbo filed an application for DIB on March 2, 2007 which was initially denied on April 27, 2007 and upon reconsideration on July 24, 2007.[2] Imbo then requested a hearing and, on November

---

[1] On August 16, 2010, by the consent of all parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 this case was assigned to this Court for all proceedings, including entry of final judgment (dkts. [10] & [11] ).

[2] R. at 15.

17, 2008, Administrative Law Judge ("ALJ") Mona Ahmed conducted an evidentiary hearing on Imbo's DIB claim.[3] After ordering a supplemental neuropsychological evaluation for Imbo, the ALJ issued a decision denying Imbo's disability claim.[4] Imbo appealed this decision to the Appeals Council of the SSA which denied her appeal on April 1, 2010.[5] Imbo then sought review of SSA's denial of her disability claim from this Court which has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. The Hearing and Decision

### A. Testimony and Evidence at the Hearing

The ALJ found that Imbo was insured through March 31, 2006. At the hearing, Imbo testified that she suffered a stroke in 2003 which caused her to experience significant memory issues. Her testimony on this point was unequivocal: "I have a hard time remembering things. I can't explain myself or why I do the things I do, but I get very confused. I can't think of the right words to say what I want to say."[6] Although Imbo acknowledged that she felt better after receiving treatment for her stroke, including speech therapy, her memory issues really did not get better. She testified that she could not remember things that happened a few days ago and that she had difficulty completing familiar tasks, even if the steps for the tasks were written down if some time elapsed since her last attempt. She stated that she often got confused and could not access her computer or e-mail without a "cheat sheet."[7] She rarely drove as a result of her confusion and her husband did most of the chores around the house, although she occasionally cooked a meal.[8]

Imbo did not talk with her primary care physician, Catherine Baker, M.D., about her memory

---

[3] *Id.*
[4] R. at 15-23.
[5] R. at 1-4.
[6] R. at 37.
[7] R. at 41.
[8] R. at 37-46.

issues because she consulted with Dr. Baker to treat and control her diabetes and she found it difficult to discuss other issues such as her memory loss. Dr. Baker did not make any specific recommendations to address Imbo's memory deficiencies.[9]

In addition to the memory problems and diabetes that Imbo described, she also discussed the fact that she suffered from back pain exacerbated by her weight. She stated that she could not stand more than fifteen minutes without pain.[10]

Ernest Mond, M.D. testified as a consultative medical expert. He stated that the medical records indicated that Imbo was morbidly obese and suffered from hypoparathyroidism. He also noted that Imbo's diabetes was not completely controlled. He confirmed that Imbo's back complaints were consistent with her medical records and that based on his review, she should be restricted from standing or walking more than two hours per day, should never be on ladders, ropes or scaffolds or unprotected heights, should not operate dangerous machines and only occasionally bend, squat, kneel or crawl. Most pertinently to this appeal, however, Dr. Mond also stated that Imbo's medical records showed a lesion in the speech area of her brain due to her stroke and that he believed that her reported memory loss was credible given that stroke. He could not, however, assess the full impact of this deficit based on the record and recommended that Imbo be evaluated by a neuropsychologist.[11] The ALJ ordered this evaluation.

The neuropsychologist's evaluation was done and a report of that examination was submitted to the ALJ, but there was no live testimony from (or cross examination of) the doctor. In his report, Dr. Hilger stated that Imbo was an "intelligent and capable" woman who could perform work-related

---

[9] R. at 42-43.
[10] R. at 43-44.
[11] R. at 52-57.

activities involving understanding, memory and sustained concentration. He did, however, validate a deficit in Imbo's short-term memory.[12]

The Vocational Expert, James Breen, added very little to the record and testified without the benefit of the neuropsychological evaluation. He did state that he was unwilling to find that Imbo's cognition problem limited her to unskilled work.[13]

## B. The ALJ's Decision

In her decision, the ALJ found that Imbo was insured through March 31, 2006. She further found that Imbo had severe impairments of hypoparathyroidism, diabetes, hypertension and status post-stroke through her date last insured, but did not have an impairment or combination of impairments which met or medically equaled any of the listed impairments, including listings 9.08 for Diabetes Mellitus, 11.04 for Central Nervous System Vascular Accident and 9.03 for Hyperparathyroidism. She retained a residual functional capacity ('RFC") to lift twenty-five pounds occasionally and ten pounds frequently, stand/walk about two hours in an eight hour day, sit for at least six hours, not climb ladders, ropes or scaffolds, avoid heights, hazards and dangerous machinery, and occasionally stoop, kneel, balance, crouch and crawl. Finally, the ALJ found that she was capable of performing her past work as human resource clerk.

The ALJ found that Imbo had credibly testified about her symptoms, including her memory loss, and that the memory loss Imbo described was consistent with her medically determinable impairments. But she also concluded that, to the extent Imbo's described limitations were inconsistent with the RFC she had determined, they were not entirely supported and consistent with

---

[12] R. at 712-715.
[13] R. at 63-64.

the record before her. Therefore Imbo was not entitled to DIB.[14]

## III.    Standard of Review

The Court performs a *de novo* review of the ALJ's conclusions of law, but the ALJ's factual determinations are entitled to deference.[15] The district court will uphold the ALJ's decision if substantial evidence supports the findings of the decision and if the findings are free from legal error.[16] Where reasonable minds differ, it is for the ALJ, not this Court, to make the ultimate findings as to disability.[17] However, the ALJ must build an accurate and logical connection from the evidence to his or her ultimate conclusion.[18] While the ALJ is not required to discuss every piece of evidence, the ALJ must minimally articulate his or her reasons for crediting or discrediting evidence of disability.[19]

## IV.    Analysis

### A. Did the ALJ Make A Proper Credibility Determination?

The first basis for remand argued by Imbo is that the ALJ failed to make a proper credibility determination. In her opinion, the ALJ found that Imbo had testified credibly about her limitations, but nonetheless found that to the extent her testimony was inconsistent with her RFC finding, it was not supported in the record. She does not state which parts of Imbo's testimony she does not find credible or how these statements are belied by the other evidence in the case and which she finds credible. We agree with Imbo that the ALJ's assessment of her credibility is fatally flawed.

The ALJ must follow the requirements of SSR 96-7p when making a credibility

---

[14] R. at 12-23.
[15] *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).
[16] 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).
[17] *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993).
[18] *Dixon v. Massanori*, 270 F.3d 1171, 1176 (7th Cir. 2001).
[19] *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

determination. That regulation states that the reasons for the credibility "must be grounded in the evidence and articulated in the determination or decision." Further, the decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[20] Such a determination may not be conclusory and boilerplate, but instead must set forth which statements the ALJ believed and which she did not and, here, why she rejected some of the testimony, but not all of it.[21]

In this case, Imbo testified at length about significant memory deficits and mental confusion which greatly impacted her daily life and her ability to work. The ALJ explicitly credited this testimony as believable, but nonetheless rejected Imbo's claim for benefits. She did not explain why, except to say that to the extent Imbo's testimony was not consistent with the ALJ's RFC, it was not supported by the record. This reasoning is both circular and conclusory. We find the ALJ's analysis here to be virtually indistinguishable from that rejected in *Brindisi ex rel. Brindisi v. Barnhardt*.[22] In that case the ALJ found the testimony of the minor claimant's parents to be credible except to the extent that they claimed their son was disabled. The ALJ rejected that testimony as inconsistent with the objective medical evidence, but did not say why. As the Court wrote, "the apparently post-hoc statement turns the credibility process on its head by finding statements that support the ruling credible and rejecting those that do not" without differentiating between them.[23]

We cannot sustain the decision simply because, as SSA contends, the medical evidence,

---

[20] SSR 96-7p.
[21] *Id.*
[22] 315 F.3d 783, 787-88 (7th Cir. 2003).
[23] *Id.* at 788.

particularly Dr. Hilger's evaluation, might support the ALJ's RFC finding. The Court could itself articulate reasons why some of Imbo's testimony is supported by the record and other parts not, but that is not the Court's job. In addition, some of the ALJ's statements upon which SSA relies to support her credibility findings are contradicted explicitly by the testimony in the case. For example, the ALJ states that her RFC finding is supported by the "claimant's demonstrated ability to work after the alleged onset" even though Imbo testified (and based on the ALJ's opinion, credibly testified) that her memory issues were one of the reasons she was let go from a seasonal job she had maintained for years. The ALJ also relied on the fact that the medical record did not contain consistent complaints from Imbo about memory issues, but Imbo testified that she saw her primary doctor to treat her diabetes and that the discussing her memory problems with that doctor was difficult. Because Imbo's testimony strongly supports a finding that her memory problems were significant and debilitating, it was incumbent upon the ALJ to explain specifically what testimony she believed and what testimony she did not and the reasons for her finding. This she did not do and therefore remand is necessary.

**B.     Did the ALJ Fail to Properly Determine Imbo's RFC?**

The second basis urged by Imbo to warrant remand is that the ALJ did not properly determine Imbo's RFC here because she did not include any limitations for Imbo's memory loss related to her stroke in her assessment. We agree.

The RFC "is the most you can still do despite your limitations."[24] When analyzing the RFC, the ALJ must consider the impact of all impairments even if alone they are not severe.[25] She must

---

[24] 20 C.F.R. § 404.1546(a)(1).
[25] SSR 96-8p, at *5.

further discuss why she is not accepting reported symptoms and limitations with reference to the medical and other evidence.[26]

In this case, the record was clear that Imbo suffered memory loss. Not only did Imbo testify at length about this deficit, testimony which the consultative medical expert and the ALJ stated was credible and consistent with her medical complaints, but the neuropsychological evaluation also documented it. The ALJ found that Imbo's post-stroke memory impairment to be severe, but did not include any limitations for that loss except to say that plaintiff could compensate for it with methods she learned in therapy such as note-taking. Not only is the record fairly bereft of any information concerning these supposed compensatory skills, but we agree with Imbo that it is fundamentally illogical to credit Imbo's testimony about memory loss, find her post-stroke status to be severe, and then simply ignore the impact of those findings on the RFC. Accordingly, this also is a basis for remand.

**C.     Did the ALJ Fail to Analyze the Specific Requirements of Plaintiff's Past Work?**

The third and final basis for remand urged by Imbo is that the ALJ's finding that she could perform her past duties as a human resources clerk is flawed because the ALJ did not discuss the specific requirements of her past work as required by SSR 82-62. Again we agree. The record in this case contains virtually no discussion of what this job entailed other than the ALJ's finding that the job was sedentary and semi-skilled based on a form that Imbo filled out. But the form does not discuss what Imbo's duties were and the VE did not offer any testimony about this position. The record clearly shows that Imbo had a memory deficit, but the mental and other demands of the job of which the ALJ found Imbo could return were *entirely* unexplored at the hearing. This again

---

[26]*Id.* at *7.

warrants remand under established Seventh Circuit case law.[27]

**V.      CONCLUSION**

For the reasons set forth above, Imbo's motion for summary judgment is granted. We, therefore, remand the case to the Social Security Administration for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**ENTERED: August 26, 2011**                    _____
                                                **UNITED STATES MAGISTRATE JUDGE**
                                                **Susan E. Cox**

---

[27] *See Smtih v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004).